Lawrence E. Smith   CSB# 083899
Centerpoint Building
18 Crow Canyon Court, Suite 205
San Ramon, California 94583
Telephone: (925) 820-4310
Fax:  (925) 820-9727
Email:  larry@lesmithlaw.com

Attorney for Plaintiffs
United States of America and AAA
Restaurant Fire Protection Services, Inc.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, for the use of AAA RESTAURANT FIRE CONTROL, INC., doing business as AAA FIRE PROTECTION SERVICES; and AAA RESTAURANT FIRE CONTROL, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> YERBA BUENA ENGINEERING & CONSTRUCTION, INC., a California corporation; TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut corporation; and DOES 1 TO 100, inclusive, <br><br> Defendants. | Case No.: <br><br> COMPLAINT ON MILLER ACT BOND, FOR BREACH OF CONTRACT AND NEGLIGENCE <br><br> **DEMAND FOR JURY TRIAL** |

Use Plaintiff AAA RESTAURANT FIRE CONTROL, INC., doing business as

AAA FIRE PROTECTION SERVICES ("AAA"), complains and alleges of defendants YERBA

BUENA ENGINEERING & CONSTRUCTION, INC. and TRAVELERS CASUALTY AND

SURETY COMPANY OF AMERICA, as follows:

1

## JURISDICTION

1.      This Court has subject matter jurisdiction of this action pursuant to

Section 3133 of Title 40 and Section 1367 of Title 28 of the United States Code.

## VENUE

2.   Venue is appropriate in this court because one of the defendants resides in this

district, and a substantial amount of the acts and omissions giving rise to this lawsuit occurred in

this district.

## INTRADISTRICT ASSIGNMENT

3.   This lawsuit should be assigned to the San Francisco Division of this Court

because a substantial part of the events or omissions which give rise to this lawsuit occurred in

the County of San Francisco, California.

## PARTIES

4.   Plaintiff AAA RESTAURANT FIRE CONTROL, INC. ("AAA") is, and at all

times relevant to this complaint has been, a corporation duly organized and existing under the

laws of the State of California and duly licensed as a Fire Protection Contractor in the State of

California.  AAA is, and at all times relevant to this complaint has been, doing business under

the fictitious business name of AAA FIRE PROTECTION SERVICES.

5.   Plaintiff AAA is informed and believes, and on that basis alleges, that

defendant YERBA BUENA ENGINEERING & CONSTRUCTION, INC. ("YBEC") is, and all

times relevant to this complaint has been, a corporation duly organized and existing under the

laws of the State of California, with its principal place of business in the City and County of San

Francisco, California.

6.   Plaintiff AAA is informed and believes, and on that basis alleges, that

defendant TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA

1  ("TRAVELERS") is, and all times relevant to this complaint has been, a corporation duly

2  organized and existing under the laws of the State of Connecticut, duly qualified to do business

3  in the State of California and authorized by the State of California to engage in the business of

4  acting as a surety on bonds required or authorized by law.

5  FIRST CAUSE OF ACTION
   (FOR RECOVERY ON PAYMENT BOND)

6  7. Use plaintiff AAA incorporates here by reference the allegations of paragraphs

7  1 through 6, inclusive of this Complaint.

8  8.  Plaintiff is informed and believes, and on that basis alleges, that on or about

9  September 23, 2005, YBEC entered into a written contract with the United States of America, by

10 and through the United States National Parks Service, Contract No. N8147050044 (the "Prime

11 Contract"), by the terms of which YBEC agreed to perform that certain work of improvement

12 known as the Alcatraz Island Fire Protection Improvement, located at Alcatraz Island in the City

13 and County of San Francisco, California (the "Project").

14 9.  On or about November 9, 2005, YBEC entered into a written subcontract

15 agreement with AAA (the "Subcontract") pursuant to which AAA agreed to provide material,

16 labor and services to be incorporated into the Project.  A true and correct copy of the Subcontract

17 is attached to this Complaint as Exhibit "A" and incorporated here by reference.

18 10.  On or about November 9, 2005, YBEC, as principal, and TRAVELERS, as

19 surety, pursuant to Section 3131 of Title 40 of the United States Code, executed and delivered a

20 certain Payment Bond 10461 (the "Bond"), in the penal sum of $905,705.00, pursuant to which

21 YBEC and TRAVELERS bound themselves, jointly and severally, for the purpose of allowing a

22 joint action or actions against any or all of them and bound themselves in a sum of money equal

23 to the contract price.  A true and accurate copy of the Bond is attached to this Complaint as

24 Exhibit "B" and incorporated here by reference.

25

26

11.  During the course of the performance and prosecution of the Project, use plaintiff AAA supplied labor and materials for the installation of fire sprinkler, pipe, valves, fittings and other related materials to YBEC pursuant to the Subcontract and at YBEC's special instance and request.  The labor and materials were furnished to be used and the same were actually used in the prosecution of the Project.

12.  The labor and materials so furnished by use plaintiff AAA in the prosecution of the Project were and are reasonably worth the sum of $297,188.86.  No part of that sum has been paid or credited on that amount except for payments of $154,378.00.  There is now due, owing and unpaid to use plaintiff AAA the sum of $142,810.86 plus interest at the legal rate since August 1, 2006, after deducting all just credits and offsets.

13.  Plaintiff AAA has fully and completely performed all promises and conditions on AAA's part to be performed under the Subcontract and under the Bond, except for those promises and conditions that have been excused or prevented by the acts and omissions of defendants.

14.  AAA last furnished labor and materials to the Project after January 1, 2007, and a period of 90 days has elapsed since AAA last provided labor or materials to the Project.

15.  AAA is entitled to recover an interest penalty pursuant to Section 3905 of Title 31 of the United States Code.

16.  The Subcontract provides that if AAA commences litigation pursuant to the Subcontract, the prevailing party shall be entitled to an award of reasonable attorneys fees and costs to be determined by the Court.

17.  Under the Bond, TRAVELERS is jointly and severally obligated to provide payment to AAA for work performed on the Project.  Accordingly, on the failure of YBEC to compensate AAA for the work performed, TRAVELERS is obligated to pay AAA the amount set forth above.

WHEREFORE, the United States of America, for the use and benefit of plaintiff AAA, requests judgment against defendant TRAVELERS as set forth below.

SECOND CAUSE OF ACTION
(FOR BREACH OF CONTRACT)

18.  Plaintiff AAA incorporates here by reference the allegations of paragraphs 7 through 16, inclusive, of this Complaint.

19.  On or about August 1, 2006, defendant YBEC breached the Subcontract by failing to make timely payment of amounts due to AAA pursuant to the Subcontract.

WHEREFORE, plaintiff AAA requests judgment against defendant YBEC as set forth below.

THIRD CAUSE OF ACTION
(NEGLIGENCE)

20.  Plaintiff AAA incorporates here by reference the allegations of paragraphs 7 through 16, inclusive, of this Complaint.

21.  AAA is informed and believes, and on that basis alleges, that during AAA's performance of the Subcontract, YBEC, through its employees, agents and subcontractors, negligently damaged work completed by AAA and damaged and/or converted AAA's equipment and supplies.

22.  As a proximate result of the negligence of YBEC, AAA has suffered damages in excess of $35,000, to be proven at trial.

WHEREFORE, plaintiff AAA requests judgment be entered as set forth below:

1.  On the first cause of action, for judgment against defendant TRAVELERS in favor of the United States of America for the use and benefit of plaintiff AAA, in the amount of $142,810.86, plus interest at the legal rate from August 1, 2006, through the date of judgment, interest penalties pursuant to Section 3905 of Title 31 of the United States Code, and reasonable attorneys fees under the Subcontract.

2.  On the second cause of action, for judgment against defendant YBEC in favor of AAA in the amount of $142,810.86, plus interest at the legal rate from August 1, 2006, through the date of judgment, interest penalties pursuant to Section 3905 of Title 31 of the United States Code, and reasonable attorneys fees under the Subcontract.

3.  On the third cause of action, for judgment against defendant YBEC in favor of AAA in an amount in excess of $35,000, to be proven at trial, and reasonable attorneys fees under the Subcontract.

4.  On all causes of action, for such other and further relief as the court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues.


Dated: _____        _____

Lawrence E. Smith
Attorney for United States Of America, for the use of AAA
Restaurant Fire Control, Inc., and AAA Restaurant Fire
Control, Inc.

EXHIBIT "A"

THIS AGREEMENT, made and entered into at San Francisco, California this December 28ᵗʰ, 2005, by and between YERBA BUENA ENGINEERING & CONSTRUCTION, INC., hereinafter called CONTRACTOR, with principal office at 1485 Bayshore Blvd., Suite 256, San Francisco, CA 94124, and AAA Fire Protection Services, hereinafter called SUBCONTRACTOR, whose address is P. O Box 3626, Hayward, CA 94540

## RECITALS

On or about the 26ᵗʰ of September, 2005, CONTRACTOR entered into a contract with the National Park Service, hereinafter called OWNER, whose address is PWR-GOGA Golden Gate NRA, Bldg. 201, Fort Mason, San Francisco, CA 94123 to perform the following construction work:

### Alcatraz Island Fire Protection Improvement
### Contract No. N8147050044

Said work is to be performed in accordance with the subcontract and the plans and specifications. Said plans and specifications have been prepared by or on behalf of National Park Service PWR-GOGA Department

## SECTION 1 - ENTIRE CONTRACT

SUBCONTRACTOR certifies and agrees that he is fully familiar with all of the terms, conditions and obligations of the Contract Documents, as hereinafter defined, the location of the job site, and the conditions under which the work is to be performed, and that he enters into this Agreement based upon his investigation of all of such matters and is in no way relying upon any opinions or representations of CONTRACTOR. It is agreed that this Agreement represents the entire agreement. It is further agreed that the Contract Documents are incorporated in this Agreement by this reference, with the same force and effect as if the same were set forth at length herein, and that SUBCONTRACTOR and his subcontractors will be and are bound by any and all of said Contract Documents insofar as they relate in any part or in any way, directly or indirectly to the work covered by this Agreement. SUBCONTRACTOR agrees to be bound to CONTRACTOR in the same manner and to the same extent as CONTRACTOR is bound to OWNER under the Contract Documents, to the extent of the work provided for in this Agreement, and that where, in the Contract Documents reference is made to CONTRACTOR and the work or specification therein pertains to SUBCONTRACTOR'S trade, craft, or type of work then such work or specification shall be interpreted to apply to SUBCONTRACTOR instead of CONTRACTOR. The phrase "Contract Documents" is defined to mean and include: Legal and procedural documents, general conditions, special provisions, technical specification, appendix, drawings, and addenda entitled " Alcatraz Island Fire Protection Improvement.

## SECTION 2 - SCOPE

SUBCONTRACTOR, is to provide material, labor, and services for the above referenced contract. SUBCONTRACTOR agrees to furnish all material and labor required for the prompt and efficient execution of the work described herein and to perform the work necessary or incidental to provide fire protection system for Book Store, Entry Way and Electric Room in Bldg 64, Bldg 64 Casemates, Bldg 64 Storage Area, Bldg 64 Dock Wooden Shed Area, complete hydrant system throughout, sprinkler piping run throughout, electrical shop and Morgue Water Tanks for the project in strict accordance with the Contract Documents and more particularly, though not exclusively, specified in SUBCONTRACTOR'S quote dated December 07, 2005, attached hereto (Exhibit A) and incorporated herein by reference.

page: 1

SECTION 3 - CONTRACT PRICE

CONTRACTOR agrees to pay SUBCONTRACTOR for the strict performance of his work, the sum of:
TWO HUNDRED SEVENTY SIX THOUSAND, TWO HUNDRED AND SEVENTY DOLLARS
WITH ZERO/100 ($276,270.00), subject to additions and deductions for changes in the work as may be
agreed upon, and to make payment in accordance with Payment Schedule, Section 4.


SECTION 4 - PAYMENT SCHEDULE

CONTRACTOR agrees to pay SUBCONTRACTOR in monthly payments of 100% of labor and
materials which have been placed in position and for which payment has been made by OWNER to
CONTRACTOR. The remaining 10% shall be retained by CONTRACTOR until he receives final
payment from OWNER, but not less than sixty days after the entire work required by the prime contract
has been fully completed in conformity with the Contract Documents and has been delivered and
accepted by OWNER and CONTRACTOR. Subject to the provisions of the next sentence, the retained
percentage shall be paid to SUBCONTRACTOR promptly after CONTRACTOR receives his final
payment from OWNER. SUBCONTRACTOR agrees to furnish, if and when required by
CONTRACTOR, payroll affidavits, receipts, vouchers, releases of claim for labor, material, and
subcontracts performing work or furnishing materials under this Agreement, all in form satisfactory to
CONTRACTOR, and it is agreed that no payment hereunder shall be made, except at CONTRACTOR'S
option, until and unless such payroll affidavits, receipts, vouchers, or releases, or any or all of them, have
been furnished. Any payment made hereunder prior to completion and acceptance of the work, as
referred to above, shall not be construed as evidence of acceptance of any part of SUBCONTRACTOR'S
work.

SECTION 5 - GENERAL SUBCONTRACT PROVISIONS

General Subcontract Provisions on following pages are an integral part of this Agreement.

SECTION 6 - SPECIAL PROVISIONS

Subcontractors shall submit proof of insurance coverage in conformance with Addendum A affixed to
this Subcontract Agreement.

Contractors are required by law to be licensed and regulated by the Contractor's State License Board.
Any questions concerning a contractor may be referred to the registrar of the board whose address is:
Contractors' State License Board, Sacramento, California

IN WITNESS WHEREOF: The parties hereto have executed this Agreement for themselves, their heirs,
executors, successors, administrators, and assignees on the day and year first above written.

SUBCONTRACTOR                         CONTRACTOR

AAA Fire Protection Services          Yerba Buena Engineering & Construction, Inc.
by _____           by _____
    Name         Title                    Miguel Galarza, President
→ Corporation → Partnership → Proprietorship    CA lic. 659757 A/B/Haz/Hic/Asb
   (seal)

Contractor's State License No. CA LIC. 719757

page: 2

## ADDENDUM "A" TO SUBCONTRACT

## SUBCONTRACT INSURANCE REQUIREMENTS

In addition to the requirement contained in General Subcontract Provisions Section A: Insurance, Subcontractor shall, at its expense, carry and maintain insurance on all its operations, in companies having at least an A- VII financial rating and in forms acceptable to the Contractor as follows:

1. **Workers' Compensation Insurance as required by any applicable law, regulation or statute including:**

   a. $1,000,000 each accident for bodily injury by accident;
      $1,000,000 each employee for bodily injury by disease;
      $1,000,000 policy limit for bodily injury by disease;
   b. Longshoreman's & Harbor Workers' Act coverage on any employees under this jurisdiction;
   c. Coverage for Jones Act exposure on any maritime exposure;
   d. Waiver of Subrogation endorsement.

2. **General Liability Insurance, either Comprehensive General Liability or Commercial General Liability, including coverage for:**

   a. Premises and Operations;
   b. Broad Form Property Damage including Completed Operations, shall be carried for one year following completion of the project;
   c. Explosion, Collapse, Underground Hazards;
   d. Contractual Liability insuring obligations assumed in this subcontract;
   e. Contractors' Protective Liability
   f. Personal Injury Liability;
   g. Severability of Interest Clause;
   h. Aggregate Limits of Insurance shall apply separately to the project.

3. **Limits of Liability**

   a. $2,000,000 each occurrence Bodily Injury and Property Damage combined;
   b. $2,000,000 for Personal Injury Liability;
   c. $2,000,000 aggregate on Products-&-Completed Operations;
   d. $2,000,000 general aggregate;
   e. If either defense costs are included in the General Aggregate limit or if the General Aggregate limit does not apply separately to this project, then the required General Aggregate limit is to be $5,000,000.

4. **Automobile Liability Insurance, including:**

   a. Coverage on all owned, non-owned and hired automobiles;
   b. Limit of liability shall not be less than $1,000,000 Combined Single Limit;
   c. Severability of Interest Clause.

5. **A "Modified Occurrence" form is _not_ acceptable.**

6. **The "Claims Made" form of policy is only acceptable with prior approval.**

page: 3

### 7. Aircraft Insurance:

If the Subcontractor or his Subcontractors use any owned, leased, chartered or hired aircraft of any type in the performance of this contract, they shall maintain aircraft liability insurance in an amount of not less than $10,000,000 per occurrence including Passenger Liability. Evidence of coverage in the form of a certificate of insurance shall be provided prior to the start of the project.

### 8. Professional Liability Exposure:

A $ 1,000,000 Professional Liability Insurance Policy shall be carried by Subcontractor or his Sub-subcontractor if work under this subcontract includes professional or design-build services. Evidence of coverage in the form of a certificate of insurance shall be provided prior to the start of the project. Coverage must allow for the reporting of claims for 2 years following completion of the work.

### 9. Hazardous Materials and Pollution Liability:

If Subcontractors or their Subcontractors are either required to perform remediation of hazardous materials such as asbestos containing materials, contaminated soil, etc., or if their operations create an exposure to hazardous materials, they must, in addition to the above requirements, carry a "Contractor's Pollution Liability" policy with limits not less than $2,000,000 per occurrence and not less than $2,000,000 aggregate for Bodily Injury, Personal Injury and Property Damage, naming Contractor as additional insured.

If Subcontractor or their subcontractors haul hazardous waste, they must carry Automobile Liability Insurance with a $2,000,000 combined single limit per occurrence for Bodily Injury and Property Damage applicable to all hazardous waste hauling vehicles and include MCS 90.

### 10. Builder's Risk Insurance:

Contractor and Subcontractor waive all rights against each other and against all other subcontractors and Owner(s) for loss or damage to the extent reimbursed by Builder's Risk or any other property or equipment insurance applicable to the work. Except such rights as they may have in the proceeds reimbursed by Builder's Risk or any other property or equipment insurance applicable to the work, except such rights as they may have to the proceeds of such insurance. If the policies of insurance referred to in this Section require an endorsement or consent of the insurance company to provide for continued coverage where there is a waiver of subrogation, the owners of such policies will cause them to be so endorsed or obtain such consent.

Upon written request of Subcontractor, Contractor shall provide Subcontractor with a copy of the Builder's Risk policy of insurance or any other property or equipment insurance in force for the project and procured by Contractor, Subcontractor shall satisfy itself as to the existence and extent of such insurance prior to commencement of Subcontractor's work.

If Builder's Risk insurance purchased by Owner(s) or Contractor provides coverage for Subcontractor for loss or damage to Subcontractor's work, Subcontractor shall be responsible for the insurance policy deductible amount applicable to damage to Subcontractor's work and/or damage to other work caused by Subcontractor.

If not covered under the Builder's Risk policy of insurance or any other property or equipment insurance required by the Contract Documents, Subcontractor shall procure and maintain at its own expense property and equipment insurance for portions of Subcontractor's work stored off the site or in transit.

page: 4

JUN-06-2007 WED 08:11 AM     AAA FIRE PROTECTION     FAX No. 510 785 6717          P. 005

If Owner(s) or Contractor has not purchased Builders Risk or equivalent insurance including the full insurable value of Subcontractors work, the Subcontractor shall procure such insurance at its own expense as well protect the interests of Subcontractor and its subcontractors in the work. Such insurance shall also apply to any of Owners or Contractors property in the care, custody or control of Subcontractor.

**11. Additional Insured Endorsement:**

Contractor and Owner shall be named as additional insureds under Subcontractor's General and Excess/Umbrella policy(s) by use of Insurance Services Office Form CG 20 10 11 85 or its equivalent and such policy(s) shall be endorsed to provide that they shall be primary and neither the Owner's nor contractor's policies will be called upon to contribute with the Subcontractor's policy(s). All insurance policies shall by appropriate language waive the right of subrogation against Contractor and Owner.

**12. Change in Limits or Requirements:**

If higher limits or other forms of insurance are required by either the Owner or the Contractor, the Subcontractor will comply with such requirements.

**13. Certificates of Insurance:**

Certificates of Insurance shall be furnished by the Subcontractor to Contractor before any work is commenced hereunder by the Subcontractor. The Certificates of Insurance shall provide that there will be no cancellation or reduction of coverage without thirty days prior written notice to Contractor. In the event Subcontractor does not comply with the requirements of this section, Contractor, at its option, may provide insurance coverage to protect its interests and charge the Subcontractor for the cost of that insurance or Contractor may terminate this Agreement. The required insurance shall be subject to approval of Contractor, but any acceptance of insurance certificates by the Contractor shall in no way limit or relieve the Subcontractor of the duties and responsibilities assumed by the Subcontractor in this Contract. Copies of policies shall be furnished upon request.

**14. Maintenance of Certificates of Insurance:**

No work shall be performed at the project site until said certificates have been furnished and approved. Payment may be withheld, at the option of the Contractor, until such certificates have been furnished, or if upon receipt of a cancellation notice on a policy, until withdrawal of the notice or the reinstatement of the canceled policy.

**15. Insurance Requirements for Sub-subcontractors:**

Subcontractor shall ensure that all tiers of his Subcontractors shall maintain insurance in like form and amounts, including the Additional Insured requirements set forth in Paragraph "11." Copies of Certificates of Insurance shall be provided by each Subsubcontractor prior to the start of their work on this project.

page: 5

## General Subcontract Provisions

A.    INSURANCE – SUBCONTRACTOR: Before SUBCONTRACTOR performs any work at, or prepares to deliver materials to, the site of construction, SUBCONTRACTOR shall comply with Addendum A. INSURANCE REQUIREMENTS. The requirement for carrying the foregoing insurance shall not derogate from provisions for indemnification of CONTRACTOR by SUBCONTRACTOR under paragraph B of this Agreement.

B.    GENERAL INDEMNITY – All work covered by this Agreement at the site of construction or in the preparing or delivering materials or equipment, or any or all of them, to the site shall be at the risk of the SUBCONTRACTOR exclusively. SUBCONTRACTOR shall, with respect to all work which is covered by or incidental to this subcontract, indemnify and hold CONTRACTOR harmless from and against all of the following:

    1.    Any claim, liability, loss, damage, cost, expenses, including reasonable attorney's fees, awards, fines or judgments arising by of reason of the death or bodily injury to persons, injury to property, design defects (if design originated by SUBCONTRACTOR), or other loss, damage or expense, including any of the same resulting from CONTRACTOR's alleged or actual negligence act or omission, regardless of whether such act of omission is active or passive; and

    2.    Any and all claims, liability, loss, damage, costs, including reasonable attorney's fees, awards, fines or judgments arising by reason of obligation or indemnity which CONTRACTOR has to GENERAL CONTRACTOR.

    It is expressly acknowledged and agreed that each of the foregoing indemnities is independent, and that both shall be given effect. However, SUBCONTRACTOR shall not be obligated under this Agreement to indemnify CONTRACTOR with respect to the sole negligence or willful misconduct of CONTRACTOR, his agents or servant or subcontractors who are directly responsible to CONTRACTOR, excluding SUBCONTRACTOR herein.

C.    BONDING OF SUBCONTRACTOR - Concurrently with the execution of this Agreement, or at any time during its performance, SUBCONTRACTOR shall, if required by CONTRACTOR, execute a Labor and Material Bond and Faithful Performance Bond, in an amount equal to 100% of the Contract Price in Section 2. Said bonds shall be executed by a corporate surety acceptable to CONTRACTOR and shall be in a form satisfactory to CONTRACTOR. CONTRACTOR shall pay the premium on said bonds unless otherwise provided herein or in the Contract Documents.

D.    TIME – Time is the essence of this Agreement. It shall be SUBCONTRACTOR'S obligation to conform to CONTRACTOR'S progress schedule, subject to CONTRACTOR's modification, which is incorporated herein by this reference and made a part hereof. SUBCONTRACTOR shall prepare and obtain approval as required by the Contract Documents for all shop drawings, details, samples, and all other things necessary and incidental to the prosecution of his work in conformance with the said progress schedule. He shall coordinate the work covered in this Agreement with that of all other contractors, subcontractors, and of the CONTRACTOR in a manner which will facilitate the efficient completion of the entire work. CONTRACTOR shall have complete control of the premises on which the work is to be performed and shall have the right to decide the time and order of in which various portions of the work shall be installed or the priority of the work, of other subcontractors, and, in general, all matters representing the timely and orderly conduct of the work of SUBCONTRACTOR on the premises.

    Should SUBCONTRACTOR be delayed in the prosecution or completion of the work by the act, neglect or default of the GENERAL CONTRACTOR, or ARCHITECT, or of CONTRACTOR, or should the SUBCONTRACTOR be delayed waiting for materials, if required by this CONTRACT to be furnished by the GENERAL CONTRACTOR or CONTRACTOR, or by damage caused by fire or other casualty for which the SUBCONTRACTOR is not responsible, or by the combined action of workmen in no way caused by, or resulting from default or collusion on the part of SUBCONTRACTOR, or in the event of a lockout by CONTRACTOR, then the time herein fixed for the completion of work shall be extended the number of days that SUBCONTRACTOR was delayed, but no allowance or extension shall be made unless a claim therefor is presented in writing to the CONTRACTOR within 48 hours of the commencement of such delay, and under no circumstances shall the time of completion be extended to a date which will prevent CONTRACTOR from completing the entire project within the time that GENERAL CONTRACTOR allows CONTRACTOR for completion.

    No claims for additional compensation or damages for delays, whether in the furnishing of material by CONTRACTOR, or delays by other subcontractors or GENERAL CONTRACTOR, will be allowed by CONTRACTOR, and said extension of time for the completion shall be the sole remedy of SUBCONTRACTOR; provided, however, that in the event, and in such event only, that CONTRACTOR obtains additional compensation from GENERAL CONTRACTOR on account of such delays, SUBCONTRACTOR shall be entitled to such portion of the additional compensation so received by CONTRACTOR, or in the event of a lockout by CONTRACTOR as is equitably under all of the circumstances. Nothing herein contained shall require CONTRACTOR to make any claim against GENERAL CONTRACTOR for such delays, and it is specifically agreed that the failure of CONTRACTOR to prosecute any such claim against GENERAL CONTRACTOR shall not entitle SUBCONTRACTOR to any claim for damages against CONTRACTOR.

E.    CHANGES IN THE WORK – SUBCONTRACTOR hereby agrees to make any and all changes, furnish the materials and perform the work that CONTRACTOR may require, without nullifying this Agreement, at a reasonable addition to, or reduction from, the Contract Price stated herein, and prorate the same, SUBCONTRACTOR shall adhere strictly to the plans and specifications unless a change therefrom is authorized in writing. Under no conditions shall SUBCONTRACTOR make any changes, either as additions or deductions, without the written order of the CONTRACTOR and CONTRACTOR shall not pay any extra charges made by the SUBCONTRACTOR which have not been agreed upon in writing by CONTRACTOR; and, in no event, shall CONTRACTOR make payment for any such extra charges unless and until the CONTRACTOR itself receives payment from GENERAL CONTRACTOR. SUBCONTRACTOR shall submit immediately to the CONTRACTOR written copies of his firm's cost or credit proposal for changes in the work. Disputed work shall be performed and entered in writing by the CONTRACTOR, and the proper cost or credit breakdown therefor shall be submitted without delay by SUBCONTRACTOR to CONTRACTOR.

    SUBCONTRACTOR shall give notice of claim relating to any work for which extra compensation is asserted within 30 days after such work is performed or SUBCONTRACTOR shall be deemed to have abandoned any claim therefor.

    If the SUBCONTRACTOR initiates a substitution, deviation or change in the work which affects the scope of the work or the expense of other trades, SUBCONTRACTOR shall be liable for the expense thereof.

    No change, alteration or modification in or deviation from this Agreement or the plans or specification, whether made in the manner herein provided or not shall release Agreement and neither GENERAL CONTRACTOR nor CONTRACTOR shall be under any obligation to notify the surety or sureties of any such change.

F.    DAMAGES CAUSED BY DELAYS – Should SUBCONTRACTOR default in the proper performance of the prime contract work, he shall be liable for any and all loss and damages, including liquidated damages sustained by CONTRACTOR as a result thereof. SUBCONTRACTOR shall not be liable under this paragraph if such default is caused by strikes, lockouts, acts of God or other reasons beyond the control of SUBCONTRACTOR, contending which, however, notice of occurrence of same shall be given in writing immediately by SUBCONTRACTOR to CONTRACTOR.

G.    LIENS – SUBCONTRACTOR shall at all times indemnify and save CONTRACTOR and GENERAL CONTRACTOR harmless against all liability for claims and liens for labor performed or materials used or furnished to be used on the job, including any costs and expenses for attorneys' fees and all incidental or consequential damages resulting to CONTRACTOR or GENERAL CONTRACTOR from such claims or liens. Further, in case suit on such claims is brought, SUBCONTRACTOR shall defend said suit at his own cost and expense, and will pay and satisfy any such lien or judgment as may be established by the decision of the court in said suit. SUBCONTRACTOR agrees within ten (10) days after written demand to cause the effect of any suit or lien to be removed from the premises, and in event SUBCONTRACTOR shall fail so to do, CONTRACTOR is authorized to use whatever means at its discretion it may deem appropriate to cause said lien or suit to be removed or discharged and the cost thereof together with reasonable attorneys' fees, shall be immediately due and payable to CONTRACTOR by SUBCONTRACTOR. SUBCONTRACTOR may litigate any such lien or suit provided he causes the effect thereof to be removed, promptly in advance, from the premises and shall further do such things as may be necessary to cause GENERAL CONTRACTOR not to withhold moneys due CONTRACTOR from GENERAL CONTRACTOR by reason of liens or suits.

    It is understood and agreed that the full and faithful performance of this Agreement on the part of the SUBCONTRACTOR (including the payment of any obligation due from SUBCONTRACTOR to CONTRACTOR, and any amounts due to labor or materialmen furnishing labor or material for said work) is a condition precedent to SUBCONTRACTOR's right to receive payment for the work performed, and any such moneys paid by CONTRACTOR to SUBCONTRACTOR under the terms of this Agreement shall be impressed with a trust in favor of labor and materialmen furnishing labor and material to SUBCONTRACTOR on the work herein subcontracted.

page: 6

H.    RECOURSE BY CONTRACTOR - In the event that SUBCONTRACTOR at any time refuses or neglects to supply a sufficient number of properly skilled workmen or a sufficient quantity of materials of proper quality, or for adjudicated a bankrupt, or files an arrangement proceeding, or commits any act of insolvency, or makes an assignment for benefit of creditors without CONTRACTOR'S consent, or fails to make prompt payment to his materialmen or laborers, or fails in any respect to properly and diligently prosecute the work covered by this Agreement, or becomes delinquent with respect to contributions or payments required to be made to any Health and Welfare, Pension, Vacation, Apprenticeship or other employee benefit program or trust, or fails to fulfill any of the provisions of Paragraph I of these General Subcontract Provisions by him to be performed, or otherwise fails to perform fully any and all segments herein contained, CONTRACTOR may, at his option: (1) after giving forty-eight (48) hours written notice to SUBCONTRACTOR, provide any such labor and materials as may be necessary and deduct the cost thereof from any money then due or thereafter to become due to the SUBCONTRACTOR under this Agreement; or (2) terminate SUBCONTRACTOR'S right to proceed with the work and, in that event, CONTRACTOR shall have full right to enter upon the premises of the project and take possession, for the purpose of completing the work included under this Agreement, of all material, tools, and appliances of SUBCONTRACTOR, and may employ any other person or persons to finish the work and provide material therefor. In case of such termination of SUBCONTRACTOR'S right to proceed with the work, said SUBCONTRACTOR shall not be entitled to receive any further payment under this Agreement until the work undertaken by the CONTRACTOR in his prime contract is completely finished. At that time, if the unpaid balance of the amount to be paid under this Agreement exceeds the expenses incurred by CONTRACTOR in finishing SUBCONTRACTOR'S work, such excess shall be paid by CONTRACTOR to SUBCONTRACTOR; but, if such expenses shall exceed such unpaid balance, then SUBCONTRACTOR shall promptly pay to CONTRACTOR the amount by which the expenses incurred by CONTRACTOR for furnishing materials, for finishing the work, for attorneys' fees, and any damages sustained by CONTRACTOR by reason of SUBCONTRACTOR'S default, plus a markup of 15% General Overhead an 10% profit on any and all of such expenses, and CONTRACTOR shall have a lien upon all materials, tools and appliances taken possession of, as aforesaid, to insure the payment thereof. The notice referred to in this paragraph will be sufficient and complete when mailed to SUBCONTRACTOR at his address shown in this Agreement.

CONTRACTOR may withhold, or on account of subsequent discovered evidence, nullify the whole or a part of any payment under SECTION 4 to such extent as may be necessary to protect CONTRACTOR from loss, including costs and attorneys' fees on account of (1) defective work not remedied; (2) claims filed or reasonable evidence indicating filing of claim; (3) failure of SUBCONTRACTOR to make payment properly to his subcontractors or for materials, labor, or for fringe benefits;(4) a reasonable doubt that this Agreement can be completed for the balance then unpaid; (5)damage to another subcontractor.

When the above grounds are removed, such amounts as are then due and owing shall be paid or credited to SUBCONTRACTOR.

I.    TERMINATION OF AGREEMENT - In the event the prime contract is terminated prior to its completion, SUBCONTRACTOR shall be entitled only to payment for the work actually completed by it at the pro rate of the price herein set forth unless CONTRACTOR itself receives additional compensation or damages on account of such termination in which event, SUBCONTRACTOR shall be entitled to such proportion of the additional compensation or damages actually received as is equitable under all of the circumstances. Nothing herein contained shall require CONTRACTOR to make any claim against GENERAL CONTRACTOR for such additional compensation or damages in the event of termination before completion, and it is specifically agreed that the failure of CONTRACTOR to prosecute any such claim against GENERAL CONTRACTOR shall not entitle SUBCONTRACTOR to any claim for additional compensation or damages against CONTRACTOR.

Notwithstanding the preceding paragraph, CONTRACTOR reserves the absolute right to terminate this Agreement. In the event of termination without cause, SUBCONTRACTOR shall be entitled to payment only as follows:

1.   Cost of work actually completed in conformity with this Agreement; plus
2.   Other costs actually incurred by SUBCONTRACTOR;
3.   15% of costs referred to in paragraph 1 above for overhead and profit.

There shall be deducted from such sums as provided in this paragraph the amount of any payments made to SUBCONTRACTOR prior to the date of termination of this Agreement. SUBCONTRACTOR shall not be entitled to any claim, or claim of lien, against CONTRACTOR or against GENERAL CONTRACTOR for any additional compensation or damages in the event of such termination and payment.

In the event this Agreement is terminated for cause, SUBCONTRACTOR shall not be entitled to receive any further payment until the work undertaken by CONTRACTOR in his prime contract is completely finished. At that time, if the amount unpaid but not paid SUBCONTRACTOR before said termination exceed the expenses incurred by CONTRACTOR in finishing SUBCONTRACTOR'S work, any excess shall be paid by CONTRACTOR to SUBCONTRACTOR; but, if such expense shall exceed the said amount earned and unpaid, SUBCONTRACTOR shall promptly pay to CONTRACTOR the amount by which the expenses exceeded said sum. The expense incurred by CONTRACTOR, as just referred to, shall include CONTRACTOR'S expense for furnishing materials, for furnishing the work, for attorney's fees, and any damages incurred by CONTRACTOR by reason of SUBCONTRACTOR'S default.

CONTRACTOR may terminate this Agreement in the event that SUBCONTRACTOR, or any of his subcontractors, is listed by the Administrative Office of the various Employee Fringe Benefit Trusts, including, but not limited to, Health and Welfare, Pension, Vacation, or Apprenticeship Trusts, as being delinquent in payment or payments to such trust, regardless of the project in connection with which the delinquency or delinquencies occurred. With respect to any and all payments to be made by CONTRACTOR to said SUBCONTRACTOR under this Agreement, CONTRACTOR at his option may issue joint checks payable to SUBCONTRACTOR or any of the Employee Fringe Benefit Trusts referral to herein to the extent necessary to assure that payments required from SUBCONTRACTOR or any of his subcontractors with respect to work performed under this Agreement are paid.

J.    LABOR RELATIONS - Employment of labor by SUBCONTRACTOR shall be effected under conditions which are satisfactory to CONTRACTOR. SUBCONTRACTOR shall keep a representative at the job site during all times when SUBCONTRACTOR'S work is in progress, and such representative shall be authorized to represent SUBCONTRACTOR as to all phases of work. Prior to commencement of the work, SUBCONTRACTOR shall notify CONTRACTOR who SUBCONTRACTOR'S representative is to be, and in the event of any change of representative SUBCONTRACTOR shall notify CONTRACTOR who the new representative is to be prior to such change becoming effective.

Should there be picketing on the CONTRACTOR'S job site, and the CONTRACTOR establishes a reserved gate for the SUBCONTRACTOR'S purposes, it shall be the obligation of the SUBCONTRACTOR to continue the proper performance of his work without interruption or delay.

SUBCONTRACTOR will indemnify and hold harmless CONTRACTOR from and against any liability, loss, damage, cost, claims, awards, judgments, fines, expenses, including litigation expenses, reasonable attorneys' fees and any other costs which may be incurred by the CONTRACTOR resulting from the SUBCONTRACTOR'S failure to fulfill the covenant set forth in this paragraph.

K.    LAYOUT RESPONSIBILITY - CONTRACTOR shall establish principal axis lines and levels whereupon the SUBCONTRACTOR shall lay out and shall be strictly responsible for the accuracy of his work, for the coordination of his work with others, and for any loss or damage to other contractors engaged in work on the site by reason of the failure of SUBCONTRACTOR to set out or perform his work correctly or to coordinate his work with the work of others. SUBCONTRACTOR shall exercise prudence in laying out and performing the subcontract work so that actual final conditions and details shall result in perfect alignment with finished surfaces.

L.    WORKMANSHIP - Every part of the work herein described shall be executed in strict accordance with the Contract Documents in the most sound, workmanlike, and substantial manner. All workmanship shall be of the best of its several kinds, and all materials used in the work herein described shall be furnished in ample quantities to facilitate the proper and expeditious execution of the work, and shall be new and the best of their respective kinds, except such materials as may be expressly provided in the Contract Documents to be otherwise.

M.    PROVISIONS FOR INSPECTION - SUBCONTRACTOR shall at all time furnish to CONTRACTOR and its representatives safe and ample facilities for inspecting materials at the site of construction, shops, factories or any places of business of SUBCONTRACTOR and it subcontractors and materialmen whose materials under this Agreement may be in course of preparation, process, manufacture, or treatment. SUBCONTRACTOR shall furnish to CONTRACTOR at often as required by CONTRACTOR, full reports of the progress of the work at any place where materials under this Agreement may be in the course of preparation or manufacture. Such reports shall show the progress of such preparation and manufacture in such detail as may be required by CONTRACTOR, including, but not limited to, any plans, drawings or diagrams in the course of preparation.

page: 7

N.    MATERIALS AND WORK FURNISHED BY OTHERS - In the event the scope of work includes installation of materials or equipment furnished by others or work to be performed in areas to be constructed or prepared by others, it shall be the responsibility of SUBCONTRACTOR to examine and accept, at the time of first delivery or access, the items or areas with such care or skill as to insure a satisfactory completion of work. Use of such items or commencement of work by SUBCONTRACTOR in such areas shall be deemed to constitute acceptance thereof by SUBCONTRACTOR. Loss or damage due to acts of SUBCONTRACTOR shall be charged to the account of SUBCONTRACTOR and deducted from monies otherwise due under this Agreement.

O.    PROTECTION OF WORK - SUBCONTRACTOR shall effectively secure and protect his work done hereunder and assume full responsibility for the condition thereof until final acceptance by ARCHITECT, GENERAL CONTRACTOR, and CONTRACTOR. SUBCONTRACTOR further agrees to provide such protection as is necessary to protect the work and the workmen of CONTRACTOR, GENERAL CONTRACTOR, and other subcontractors operations.
       SUBCONTRACTOR shall be liable for any loss or damage to any work in place or to any equipment and materials on the job site caused by him or his agents, employees or guests.

P.    USE OF CONTRACTOR'S EQUIPMENT - In the event that the SUBCONTRACTOR shall use CONTRACTOR's equipment, materials, labor, supplies or facilities SUBCONTRACTOR shall reimburse CONTRACTOR at a predetermined rate, unless otherwise stated herein. Further, SUBCONTRACTOR assumes responsibility for, and shall hold CONTRACTOR harmless from any claims, actions, demands, damages, liabilities, or expenses, including attorneys' fees, resulting from the use of such equipment, materials, labor, supplies, or facilities by SUBCONTRACTOR or his agents, employees, or permittees. In the event that CONTRACTOR's employees are used by SUBCONTRACTOR, SUBCONTRACTOR shall have full responsibility for all acts or omissions of CONTRACTOR's employees with regard to such operation. SUBCONTRACTOR accepts any and all of CONTRACTOR's equipment, materials, labor, supplies, or facilities as furnished.

Q.    CLEAN-UP - At all times during the course of construction, SUBCONTRACTOR shall perform his work so as to maintain the site in a clean, safe and orderly condition. Upon completion of the work under this Agreement, SUBCONTRACTOR shall remove from the site all temporary structures, debris and waste incident to his operation and clean all surfaces, fixtures, equipment, etc. relative to the performance of this Agreement. CONTRACTOR may order SUBCONTRACTOR to clean up his areas at any time CONTRACTOR deems such action necessary. If SUBCONTRACTOR fails to perform a clean-up function within two days after notification from Contractor to do so, CONTRACTOR may proceed with that function as he judges necessary and in a manner he may deem expedient, and the cost thereof shall be charged to SUBCONTRACTOR and deducted from monies due under this Agreement. In the event CONTRACTOR is unable to determine which SUBCONTRACTOR is responsible for clean-up of any debris, etc., CONTRACTOR may apportion the cost of such clean-up in such a manner as he may determine to be equitable.

R.    GUARANTEE - SUBCONTRACTOR guarantees all materials and workmanship and agrees to replace at his sole cost and expense, and to the satisfaction of CONTRACTOR, any and all materials adjudged defective or improperly installed as well as guarantees the GENERAL CONTRACTOR and CONTRACTOR against liability, loss or damage arising form said installation during the period of one year from completion and acceptance of the work covered by the prime contract. If, however, the period of guarantee is stipulated in excess of one year by the Contract Documents, SUBCONTRACTOR shall be bound during the longer time period stipulated.

S.    INDEMNIFICATION FROM PATENT RIGHTS - SUBCONTRACTOR shall indemnify and hold CONTRACTOR harmless against any claim, suit or action, or any alleged violation or infringement of patent rights which may be made against CONTRACTOR by reason of the use in connection with or as a part of the performance of the work or the furnishing of materials hereunder of anything which is now or may hereafter be covered by patent, copyright, or trademark, and also against all expense, including attorneys' fees, which CONTRACTOR may incur in defending or adjusting any such claim, suit or action.

T.    ASSIGNMENT OF CONTRACT - SUBCONTRACTOR shall not , without written consent of CONTRACTOR, assign, transfer, nor sublet any portion or part of the work required by this Agreement nor assign any payments hereunder to others. CONTRACTOR may assign or transfer the whole or part of this Agreement, and his rights hereunder, to any corporation, individual, or partnership.

U.    INDEPENDENT CONTRACTOR - SUBCONTRACTOR is an independent contractor and shall, at his sole cost and expense, and without loss or case in Contract Price, comply with all laws, rules, ordinances, and regulations of all governing bodies having jurisdiction over the work; obtain all necessary permits and licenses therefor; pay all manufacturers' taxes, sales taxes, use taxes, processing taxes, and all federal and state taxes, insurance and contributions for Social Security and Unemployment which are measured by wages, salaries, or other remunerations paid to SUBCONTRACTOR's employees, whether levied under existing or subsequently enacted laws, rules, or regulations. SUBCONTRACTOR, upon request, shall furnish evidence satisfactory to CONTRACTOR that any or all of the foregoing obligations have been fulfilled.

V.    EXCUSE - Any act or omission of the CONTRACTOR which SUBCONTRACTOR might claim as an excuse for his own failure to perform shall be deemed waived by SUBCONTRACTOR unless he shall notify CONTRACTOR of his intention to assert such excuse within ten days after occurrence of any such omission. SUBCONTRACTOR waives any right it might have to assert provisions of California Civil Code Section 1654 against CONTRACTOR.

W.    ATTORNEYS' FEES - In the event either CONTRACTOR or SUBCONTRACTOR institutes a suit in court against the other party, or against the surety of such party, in connection with any dispute or matter arising under this Agreement, the party which prevails in that suit shall be entitled to recover from the other its attorneys' fees in reasonable amount, which shall be determined by the court and included in the judgment in said suit.

X.    DISPUTE RESOLUTION - ARBITRATION -
       (a) CONTRACTOR and SUBCONTRACTOR shall not be obligated to resolve disputes arising under this Subcontract by arbitration, unless (i) the prime contract has an arbitration provision; and (ii) a particular dispute arising between CONTRACTOR and SUBCONTRACTOR involved issues or fact of law which the CONTRACTOR is required to arbitrate under the terms of the prime contract. In the event that arbitration is required under the terms of this provision, the same arbitration(s) utilized to resolve the dispute between the GENERAL CONTRACTOR and CONTRACTOR shall be utilized to resolve the dispute under this provision.
       (b) In the event that the CONTRACTOR and GENERAL CONTRACTOR or others arbitrate matters relating to this Subcontract, the SUBCONTRACTOR shall be required, at the request of the CONTRACTOR, to prepare and present to CONTRACTOR's case, at SUBCONTRACTOR's expense, to the extent that proceedings relate to this Subcontract.
       (c) Should the CONTRACTOR enter into arbitration with the GENERAL CONTRACTOR or others with regard to the issues relating to this Agreement, the SUBCONTRACTOR shall be bound by the result of the arbitration to the same degree as the CONTRACTOR.

Y.    SAFE AND EQUAL EMPLOYMENT OPPORTUNITY VIOLATIONS - SUBCONTRACTOR'S INDEMNITY - SUBCONTRACTOR shall, at its expense, conform to the basic safety policy of the CONTRACTOR, and comply with all specific safety requirements promulgated by any governmental authority, including, without limitation, Safety Act of 1960, the California Labor Code, including sections 6300 through 6304, and 6700 through 7352, inclusive, and all successors and amendments thereto, and all standards and regulations which have been or shall be promulgated by the parties or agencies which administer the Acts.
       SUBCONTRACTOR shall, at his own expense, conform to all the equal employment opportunity policies of the CONTRACTOR, and, in addition, shall comply with all equal employment opportunity requirements promulgated by any governmental authority, including, without limitation, the requirements of the Civil Rights Act of 1964, 42 United States Code, Section 11246, 11375, and 11478, the California Employment Practices Act, the California Plan, any other applicable statutes or ordinances, plans or programs, inclusive, and all successors and amendments thereto, and all plans, programs, standards and regulations which have been or shall be promulgated or approved by the parties or agencies which administer such Acts or Orders (hereinafter collectively referred to as EEO laws).
       SUBCONTRACTOR shall have and exercise full responsibility for compliance hereunder by itself, its agents, employees, materialmen, and subcontractors with respect to its portion of the work on this Project; and shall directly receive, respond to, defend and be responsible for any citation, assessment, fine or penalty by reason of SUBCONTRACTOR's failure or failure of SUBCONTRACTOR's agents, employees, materialmen and subcontractors to comply. SUBCONTRACTOR shall indemnify and hold harmless CONTRACTOR from and against any liability, loss, damage, costs, claims, awards, judgments, fines, expenses, including litigation

page: 8

expenses, reasonable attorneys' fees, claims or liability for harm to persons or property, expenses incurred pursuant to or attendant to any hearing or meeting, or any other applicable cost which may be incurred by CONTRACTOR resulting from SUBCONTRACTOR'S failure to fulfill the covenants set forth in this paragraph.

In the event SUBCONTRACTOR fails to comply: (1) with any citation issued by the Secretary of Labor, any order issued by the Occupational Safety and Health Review Committee or any order issued by the Division of Industrial Safety of the State of California, or any other body responsible for the administration and/or enforcement of any statute, regulation or ordinance relating to occupational health and safety within the period specified in any such citation or order; (2) with any aforementioned EEO laws, or any judgment, order or award issued by the Office of Federal Contract Compliance, United States Department of Labor, or any other federal, state or local agency or any court of law, or any other body responsible for the administration of and/or enforcement of EEO laws, within the period specified in any such laws, judgment, order or award, CONTRACTOR may, at his discretion, exercise the rights and remedies provided under the terms of this SUBCONTRACT, including, but not limited to, the rights and remedies provided in Paragraph H, Recourse by Contractor.

page: 9

EXHIBIT "B"

| *PAYMENT BOND*<br>(See instructions on reverse) | DATE BOND EXECUTED (Must be same or later than date of contract)<br>November 9, 2005 | OMB NO.:9000-0045 |
|---|---|---|

Public reporting burden for this collection of information is estimate to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GSA, Washington, DC 20405

| PRINCIPAL (Legal name and business address)<br>YERBA BUENA ENGINEERING & CONSTRUCTION, INC.<br>1485 Bayshore Blvd., Suite 256<br>San Francisco, CA 94124 | TYPE OF ORGANIZATION ("X" one)<br>☐ INDIVIDUAL        ☐ PARTNERSHIP<br>☐ JOINT VENTURE    ☒ CORPORATION<br>STATE OF INCORPORATION<br>California |
|---|---|

| SURETY(IES) (Name(s) and business address(es))<br>TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA<br>10680 White Rock Road<br>Rancho Cordova, CA 95670 | PENAL SUM OF BOND |
|---|---|

| | MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
|---|---|---|---|---|
| | | *NINE HUNDRED FIVE THOUSAND SEVEN HUNDRED FIVE AND NO/100* | | |

| CONTRACT DATE<br>September 23, 2005 | CONTRACT NO.<br>C8147050044 |
|---|---|

## OBLIGATION

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and "severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

## CONDITIONS:

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

## WITNESS:

The principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

| PRINCIPAL | | | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) | 3. (Seal) | Corporate Seal |
| NAME(S) & TITLE(S) (Typed) | 1. Miguel Amaya, President | 2. | 3. | |

| INDIVIDUAL SURETY(IES) | | |
|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) |
| NAME(S) (Typed) | 1. | 2. |

| | CORPORATE SURETY(IES) | | | |
|---|---|---|---|---|
| SURETY A | NAME & ADDRESS<br>TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA<br>10680 White Rock Road, Rancho Cordova, CA 95670 | STATE OF INC.<br>Connecticut | LIABILITY LIMIT<br>$ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | |
| | NAME(S) & TITLE(S) (Typed) | 1. C. Scott Gaddy, Attorney-in-Fact | 2. | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is usable

STANDARD FORM 25-A (REV. 10-98)
Prescribed by GSA-FAR (48 CFR) 53.228(C)